# Commonwealth v. Simmeth

*Anthony D'Amico*, for plaintiff.
*Tom Schuchert*, for defendant.

CAPPY, *J.*, December 17, 1984—Since the decision orally rendered from the bench on September 27, 1984 was not appealed by the district attorney there is no need for a formal written opinion. However, this court has been inundated with requests for an explanation as to the specifics and precise rulings of this case and therefore has elected to prepare an informal memorandum of law in response to these requests.

## FINDINGS OF FACT

On or about May 9, 1984, defendant was arrested and charged with two counts of driving while intoxicated. 75 Pa. C.S. §3731. At the pre-trial hearing the

arresting officer, Sgt. John Hasek testified to the underlying factual basis which led him to conclude there was probable cause to make an arrest for driving while intoxicated. This court agreed after reviewing the facts that there was sufficient probable cause to make the arrest.

In addition, the following findings of fact were made after the testimony of Sgt. Hasek, the arresting officer and breathalyzer operator, and Dr. Winek of the Allegheny County Crime Lab, the Commonwealth's expert witness with regard to the Smith and Wesson 1000 breathalyzer unit, was concluded:

(a) Sgt. Hasek was a trained and certified breathalyzer operator; who, subsequent to defendant's arrest, administered defendant's breathalyzer test using a Smith and Wesson 1000 unit.

(b) Said unit had been tested for accuracy, as distinguished from calibration on May 5, 1984, pursuant to the testing procedures and regulations promulgated by the Pennsylvania Departments of Health and Transportation and as suggested by the owner's manual for the Smith and Wesson 1000.

(c) Said unit had been modified by a shield to prevent radio frequency interference with its operation as per Smith and Wesson Specification R. E. 142812 on August 2, 1982.

(d) Said unit had been calibrated as distinguished from tested for accuracy, by a breathalyzer maintenance operator of the Allegheny County Crime Lab, in accordance with the procedure contained in the Smith and Wesson Owner's and Maintenance Manual in conjunction with Dr. Winek's instructions and expertise, on March 2, 1984.

(e) The West View Police Department properly maintained a log book documenting the accuracy

and calibration testing dates of the unit in question.

(f) Pursuant to 75 Pa.C.S. §1547(c)(1), a test for establishing the accuracy of breathalyzer units has in fact been promulgated by the Pennsylvania Departments of Health and Transportation.

(g) The Pennsylvania Departments of Health and Transportation have not issued regulations nor established a test for calibrating breathalyzer units pursuant to 75 Pa.C.S. §1547(c)(1).

## CONCLUSIONS OF LAW

75 Pa.C.S. §1547(c)(1) provides as follows:

"§1547. Chemical testing to determine amount of alcohol or controlled substance.

(c) Test results admissible in evidence. — In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath *shall be* performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices *shall have been* calibrated and *tested for accuracy* within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certif-

icate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged." (Emphasis added.)

This court has concluded pursuant to the Rules of Statutory Construction, that the legislature's use of the word "shall" with regard to the responsibility of the Departments of Health and Transportation herein must be construed as a mandate to said departments to promulgate regulations establishing both accuracy and calibration tests for breathalyzer units in Pennsylvania. Furthermore, the statute has been drafted to require the creation of, and compliance with, said regulations as a condition precedent to the admissibility of breathalyzer results in proceedings under Title 75.

It is important to emphasize the distinction between a test for accuracy and a test for calibration. When testing a breathalyzer unit for accuracy, a single, often standard level or measure of alcohol is used, as for example five vials, each containing a pre-measured mixture of .10 percent alcohol. As each vial is tested, the same level of alcohol should register on the unit to establish its accuracy. A test for calibration, on the other hand, requires that a range of levels be tested, as for example three vials containing premeasured mixtures of 0.00 percent, .10 percent and 20 percent alcohol, respectively. The test for calibration has been more accurately defined in the McGraw-Hill Encyclopedia of Science and Technology, 1982, as follows:

"Calibration — The process of determining, by measurement or by comparison with a standard, the correct value of each scale reading on a meter or the correct value of each setting of a control knob. In a radio receiver, for example, calibration would mean

adjusting the tuned circuits in the oscillator to make the readings of the tuning dial correspond exactly to the frequencies of the incoming signals.

With measuring instruments, calibration generally involves adjusting the values of internal components so that the indication is correct at a specified number of points on the indicating scale and approximately correct between these points. With highly accurate instruments, calibration involves the preparation of a graph or table that gives the exact value corresponding to each line on the indicating scale."

Due to the failure of the Departments of Health and Transportation to promulgate testing regulations regarding calibration, in addition to those already created regarding accuracy, this court had no choice but to rule the breathalyzer results herein inadmissible in that the conditions precedent to said admissibility required by the legislature have not been met.

The necessity of this ruling becomes clear when considering the countless number of police or breathalyzer stations, and the number of judges existing throughout the Commonwealth of Pennsylvania. In the absence of uniform regulations, the methods and the time periods in which breathalyzer units are tested for calibration can literally differ from station to station and/or courtroom to courtroom, with as many variances in procedure as there are owner's manuals and expert witnesses, and with as many variances in time periods for retesting as there are days in the year. In view of the tremendous significance attributed to breathalyzer results under Title 75, most obviously in criminal prosecutions resulting from alleged drunk driving, it is critical to the fair and accurate fact-finding process, and administration of justice, that uniform accuracy and

calibration testing standards be established as an impartial guide to the admission of such crucial evidence. When, as in Pennsylvania, breathalyzer results can constitute prima facie evidence of drunk driving, the distinction between testing for accuracy and testing for calibration, deemed by some as simply another "legal technicality", cannot and must not be underestimated. Uniform testing regulations must be promulgated as mandated by the legislature, and must include, but not be limited to, time periods during which a breathalyzer unit must be tested and the time frequency within which it must be retested, prior to the admission of test results into evidence.